**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| WILDEARTH GUARDIANS, a New Mexico nonprofit corporation, 301 N. Guadalupe St., Suite 201, Santa Fe, New Mexico 87501, | Case No. 26-1622 |
| Plaintiff, | |
| v. | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| The U.S. DEPARTMENT OF THE INTERIOR, a federal department, 1849 C Street, NW, Washington, DC 20240; the U.S. BUREAU OF LAND MANAGEMENT, a federal agency, 1849 C Street, NW, Washington, DC 20240; and the U.S. FISH AND WILDLIFE SERVICE, a federal agency, 1849 C Street, NW, Washington, DC 20240, | |
| Defendants. | |

**INTRODUCTION**

1. This case concerns Defendants the United States Department of the Interior ("the Department"), the United States Bureau of Land Management ("the BLM"), and the United States Fish and Wildlife Service ("the Service") (collectively, "Defendants") repeatedly and unlawfully withholding records regarding public lands and wildlife management from Plaintiff WildEarth Guardians ("Guardians").

2. Guardians regularly requests documents from Defendants under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Defendants regularly violate FOIA's statutory deadlines, allowing months or years to pass without a determination on Guardians' requests.

1

3.    Guardians now challenges Defendants' failure to make final determinations, constructive denials, and unlawful withholdings of non-exempt responsive records, for five separate FOIA requests dating from 2020 through 2026.

4.    To remedy the agency's violations, Guardians seeks an order from this Court (1) declaring that Defendants have violated FOIA; (2) compelling Defendants to provide all responsive records to Guardians by a date certain; (3) awarding Guardians its reasonable costs and attorneys' fees; and (4) granting such additional relief as Guardians may request or this Court may deem just and proper.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331 and 1361. This Court can grant declaratory relief under 28 U.S.C. § 2201 and injunctive relief under 28 U.S.C. § 2202 and 5 U.S.C. § 552(a)(4)(B). This Court has authority to award costs and attorneys' fees pursuant to 5 U.S.C. § 552(a)(4)(E). Venue in this Court is appropriate under 5 U.S.C. § 552(a)(4)(B), under which all FOIA cases may be heard in this district, and 28 U.S.C. § 1391, because Defendants' primary offices are in this district.

6.    Because Defendants have failed to make determinations on Guardians' FOIA requests or respond to Guardians' administrative appeal within the statutory timelines, Guardians has constructively exhausted its administrative remedies and may seek immediate judicial review. 5 U.S.C. §§ 552(a)(6)(A)(ii), (a)(6)(C)(i).

## PARTIES

7.    Plaintiff WILDEARTH GUARDIANS is a nonprofit conservation organization dedicated to protecting and restoring the wildlife, wild places, wild rivers, and health of the American West. Guardians maintains offices in Arizona, Colorado, Idaho, Montana, New

2

Mexico, Oregon, and Washington. It has over 180,000 members and supporters, many of whom live near or work and recreate on public lands administered by Defendants.

8.      Guardians and its members have a long and successful history of working to protect public lands from destructive logging, grazing, and roadbuilding projects. It consistently advocates for stronger protections for species listed under the Endangered Species Act ("ESA"), which Defendants administer.

9.      Guardians relies on public records and documents obtained through FOIA to understand the threats facing public lands and the imperiled wildlife species they support.

10.      Guardians employs public education, community organizing, strategic partnerships, public records requests, information sharing, advocacy with administrative agencies, policy analysis, and litigation to ensure the protection of public lands and federally protected species across the West. Guardians acquires information about federal programs and activities affecting public lands and endangered species through FOIA. Guardians then compiles and analyzes that information, which it disseminates to its members, supporters, the general public, and public officials through various sources including publications, reports, Guardians' website, emails, letters, general news media coverage, and public presentations.

11.      Guardians' successful efforts to educate the public about these issues have significantly contributed to public understanding of governmental operations and activities associated with public land management. Because Defendants have not previously disclosed the information sought in the FOIA requests at issue here, its disclosure would significantly enhance public knowledge of how Defendants manage public lands and implement the ESA.

12.      Guardians also uses the information that it acquires through FOIA to participate in federal decision-making processes, to file administrative appeals and civil actions, and generally

to ensure that federal agencies comply with federal environmental laws. Timely access to these documents is therefore critical to Guardians' conservation mission.

13.    Defendants' management of public lands and compliance with environmental laws are matters of broad public interest. Disclosure of the requested records will enable informed public engagement and oversight of federal agency operations that impact public lands.

14.    Guardians and its staff, members, and supporters derive concrete benefits from Defendants' compliance with FOIA and from timely access to agency records. Accordingly, Guardians, its staff, and its members and supporters are concretely injured by Defendants' failure to comply with FOIA's statutory requirements. The requested relief can redress these injuries.

15.    Guardians brings suit on behalf of itself, its staff, and its members and supporters.

16.    Defendant UNITED STATES DEPARTMENT OF THE INTERIOR is a federal Department in the executive branch.

17.    Defendant UNITED STATES BUREAU OF LAND MANAGEMENT is a component federal agency in the Department.

18.    Defendant UNITED STATES FISH AND WILDLIFE SERVICE is a component federal agency in the Department.

19.    Defendants are in possession, custody, or control of the records at issue.

## STATUTORY BACKGROUND

20.    Congress enacted FOIA to grant broad public access to government information, and "focuses on the citizens' right to be informed about 'what their government is up to.'" *United States Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989). FOIA is intended to ensure transparency and public access, and to foster an informed citizenry capable of holding government leaders accountable.

4

21.     In keeping with these lofty purposes, FOIA establishes a judicially enforceable duty for federal agencies to make their records "promptly available to any person" who properly requests them. 5 U.S.C. § 552(a)(3)(A). An agency must "determine within 20 days . . . after the receipt of any [FOIA] request whether to comply with such request and . . . immediately notify the person making such request of . . . such determination and the reasons therefore[.]" *Id.* § 552(a)(6)(A)(i)(I).

22.     First, FOIA requires federal agencies to acknowledge receipt of FOIA requests and provide requesters with the date of receipt, an individualized tracking number for each request that will take longer than ten days to process, and an estimated completion date on which the agency anticipates completing action on the request. *Id*. §§ 552(a)(7)(A), (B)(i), (ii).

23.     The agency must next conduct a search calculated to uncover all relevant documents. *Id.* §§ 552(a)(3)(C)–(D); *see also Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The government bears the burden of showing that its search was adequate; it is obligated to construe the request liberally and may not arbitrarily narrow the scope of its search to exclude relevant information. The sufficiency of an agency's search is judged by a reasonableness standard that favors broad disclosure. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).

24.     Once it has located all responsive documents, the federal agency must review them to determine whether the records can be released in whole or in part. Only under limited circumstances may the agency withhold any responsive records—FOIA explicitly sets forth a "basic policy of 'full agency disclosure[.]'" *U.S. Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976)); *see also* 5 U.S.C. § 552(b). Records may only be withheld if the agency can establish that one of

nine "clearly delineated" statutory exemptions applies. *Reps. Comm.*, 489 U.S. at 773.

26. 25. The agency must then inform the requester of the scope of documents at issue and whether it intends to release them, and justify any withholdings. 5 U.S.C. §§ 552(a)(3)(A), 552(a)(6)(A)(i). The government must also notify the requester of their right to appeal any adverse determination[1] and provide the information necessary to do so. *Id.* This final determination must be made as to all responsive records uncovered in the government's search. *See Heritage Found. v. U.S. Dep't of Just.*, 775 F. Supp. 3d 424, 429–31 (D.D.C. 2025).

26. Thus, upon receipt of a properly submitted FOIA request, an agency has 20 days to (1) perform a search calculated to uncover all relevant documents; (2) review the records to determine whether they fit within a narrow statutory exemption; (3) determine and inform the requester of the scope of records it intends to produce, and the reasons for withholding any exempt documents; and (4) inform the requester how to appeal any adverse determination.

27. Congress has set forth the specific circumstances in which federal agencies may take longer than 20 business days to make a final determination on a FOIA request.

28. First, an agency may toll the determination deadline. *Id.* § 552(a)(6)(A)(ii). As relevant here, the agency may make one "reasonabl[e]" request for further information necessary to locate and identify responsive documents; the deadline is then tolled until the agency receives the requested information. *Id*.

29. Second, if the agency faces "unusual circumstances," it may extend the deadline by written notice to the requester. *Id*. § 552(a)(6)(B)(i).

---

[1] An "adverse determination" means a denial of a request for expedited processing or fee waiver, an assertion that responsive records could not be found, or a decision to withhold, in whole or part, any responsive record.

30.    FOIA specifically defines "unusual circumstances" as "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request;" the need to process "a voluminous amount of separate and distinct records which are demanded in a single request;" or the need to consult, "with all practicable speed," another agency or agency sub-component "having a substantial interest" in the request. *Id.* § 552(a)(6)(B)(iii).

31.    Thus, the existence of unusual circumstances depends on the nature of the specific request at issue rather than the agency's overall workload—and such circumstances are relevant "only to the extent reasonably necessary to the proper processing of the particular requests." *Id.* It does not matter whether *other* FOIA requests already before the agency require processing voluminous records or consultating with other agencies, only whether that specific request implicates such unusual circumstances.

32.    When seeking additional time to fulfill a FOIA request, the agency must inform the requester of "the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id*. § 552(a)(6)(B)(i).

33.    For extensions exceeding ten business days, the agency must also give the requester an opportunity to limit the request's scope to allow for faster processing or to arrange an alternative time frame for processing the request. *Id*. §§ 552(a)(6)(B)(i)–(ii).

34.    Unless the agency takes these specific steps, it must strictly comply with the statutory 20-workday deadline to make a final determination on a FOIA request. An agency's failure to timely respond to a FOIA request is itself a violation of the statute, regardless of a request's final outcome. *Id.* § 552(a)(6)(A)(ii); *see also Or. Nat. Desert Ass'n v. Locke*, 572 F.3d 610 (9th Cir. 2009).

7

35.     FOIA's mandate to make records "promptly available" to a requester also requires the agency to produce the responsive records within or shortly after the 20-workday deadline. 5 U.S.C. § 552(a)(6)(A)(i).

36.     Agency failure to comply with these deadlines also constitutes constructive denial of the FOIA request at issue. Moreover, once the deadline has passed, the requester is deemed to have constructively exhausted their administrative remedies and may immediately challenge that denial of their request in federal district court, unless the agency has "inform[ed] the requester of the scope of the documents that the agency will produce, as well as the scope of the documents that the agency plans to withhold[.]" *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 186 (D.C. Cir. 2013) (Kavanaugh, J.) ("*CREW*").

37.     If a requester does file an administrative appeal, the agency has 20 workdays in which to resolve it. Failure to do so within the allotted time constitutes constructive exhaustion of administrative remedies and denial of the appeal, which the requester may immediately challenge in federal district court. *See* 5 U.S.C. § 552(a)(6)(A)(ii); 43 C.F.R. § 2.62.

38.     An agency's duties to search for responsive documents, to comply with FOIA's strict deadlines, and to release all non-exempt, relevant documents are judicially enforceable in federal court. Once a suit is filed, "the burden is on the agency to sustain its action"; should it fail to do so, the court may order the agency to produce all requested records. 5 U.S.C. § 552(a)(4)(B).

39.     The court can enjoin an agency from withholding records and order the agency to produce any records that have been improperly withheld, either through actual denial of the request or through the agency's failure to make a timely determination. *Id*. § 552(a)(4)(B). The court may also assess reasonable litigation costs against the government where the plaintiff has

substantially prevailed, whether through court order or through a change in the agency's position. *Id.* § 552(a)(4)(E).

40.    If the government can show that it is exercising due diligence in responding to the request at issue, and that "exceptional circumstances" exist, the court may retain jurisdiction and allow the agency additional time to complete its review. *Id*. § 552(a)(6)(C)(i).

41.    Exceptional circumstances exist when an agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress" and its "existing resources are inadequate to deal with the volume of such requests[.]" *Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976); *see also Informed Consent Action Network v. Food & Drug Admin*., No. 1:25-CV-00826 (CJN), 2026 WL 799634, at *1 (D.D.C. Mar. 23, 2026) (court orders requiring agency to process 90,000–230,000 pages of records per month for two prior FOIA requests created exceptional circumstances). "Accordingly, it is not sufficient that an agency receives a high number of FOIA requests or has a large backlog of requests[.]" *Daily Caller News Found. v. Fed. Bureau of Investigation*, 387 F. Supp. 3d 112, 116 (D.D.C. 2019); *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 259 n.4 (D.D.C. 2005). The government must show that it received a "truly unforeseen and remarkable" number or requests in the relevant period. *Daily Caller*, 387 F. Supp. 3d at 116.

42.    Notably, "exceptional circumstances" are specifically defined to exclude delays resulting from a "predictable agency workload of requests," unless the agency is also making "reasonable progress" in reducing its backlog of pending requests. 5 U.S.C. § 552(a)(6)(C); *see also Daily Caller*, 387 F. Supp. 3d at 119–21 (observing that agency was not making reasonable progress in reducing its backlog if the backlog was increasing).

9

43.    In evaluating whether the government is demonstrating "due diligence" in regards to the request at issue and making "reasonable progress" on its FOIA backlog, courts may consider an agency's efforts to reduce the number of pending requests by hiring additional staff, proactively making information publicly available, or creating accelerated processes to make records available to agency personnel and attorneys. *See Washington Lawyers' Comm. for C.R. & Urb. Affs. v. U.S. Dep't of Just.*, 145 F.4th 63, 68 (D.C. Cir. 2025); *Elec. Frontier Found. v. Dep't of Just.*, 517 F. Supp. 2d 111, 117 (D.D.C. 2007). An agency's decision to *reduce* the number of employees, on the other hand, weighs against a finding of exceptional circumstances, due diligence, and reasonable progress. *See Daily Caller*, 387 F. Supp. 3d at 119; *cf. Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262, 267 (D.D.C. 2014) (holding that a change in agency policy resulting in slower processing undercut the agency's assertion of exceptional circumstances).

44.    The government must justify any failure to comply with FOIA and its strict statutory deadlines.

## FACTUAL BACKGROUND

45.    As part of its core conservation mission, Guardians routinely files FOIA requests seeking agency records pertaining to the management of federal public lands and wildlife. Many of these records are in Defendants' custody.

46.    Guardians has not received final determinations or responsive records for five FOIA requests submitted to Defendants between May, 2020 and February, 2026.[2] The responses are now months or years overdue.

---

[2] At issue in this case are FOIA request numbers DOI-BLM-2024-001345, DOI-BLM-2024-000712/MT-2024-27 and/or DOI-BLM-2024-000553, DOI-2025-001380, DOI-2025-005470, and DOI-2026-004084 (collectively, "the Requests" or "Guardians' Requests"). Unless

**Request No. DOI-BLM-2024-001345**

47.    On May 14, 2020, Guardians requested a number of records related to livestock grazing on the Sonoran Desert National Monument from the BLM. Specifically, Guardians sought "[r]ecords related to any and all grazing allotments"; "site-specific management plans for areas of critical environmental concern"; the "latest riparian database that documents current conditions, trend and status of all riparian areas"; and "any and all GIS data" related to the grazing allotments, areas of critical environmental concern, and riparian areas.

48.    Livestock grazing can rapidly damage or destroy riparian zones and sensitive habitat. Guardians sought these records to better understand how the BLM was managing its grazing program in a National Monument set aside to protect areas of great biological diversity and several archeological and historical sites.

49.    The BLM confirmed receipt of Guardians' request, but apparently did not otherwise act on it.[3]

50.    On April 6, 2026, the BLM contacted Guardians regarding the now six-year-old request. The agency stated that it was "experiencing an unprecedented surge in FOIA requests, as well as ongoing staffing shortages, which have impacted our ability to process your request."

51.    The BLM did not explain whether it had been experiencing the purportedly unprecedented surge in requests or the staffing shortages since Guardians filed its request in 2020, nor did it describe any steps it had taken to address these issues.

---

otherwise specified, all allegations and claims for relief in this pleading pertain to each of the Requests.

[3] The fact that this request from 2020 was designated "DOI-BLM-2024-001345" strongly suggests that the BLM did not even process it until 2024, although the agency confirmed receipt upon Guardians' submission of the request and never sought additional information.

11

52.    The BLM also inquired whether Guardians was still interested in the requested records and whether it might be interested in a "scope revision." Guardians informed the BLM that it was still interested in having its request processed as submitted.

53.    Defendants have not made a final determination on or produced records responsive to DOI-BLM-2024-001345.

**Request Nos. DOI-BLM-2024-000712/MT-2024-27 and/or DOI-BLM-2024-000553**

54.    On March 26, 2024, Guardians submitted a request to the BLM's Montana/Dakotas Office seeking records "relating to livestock depredations and depredation investigations by wildlife and/or the approval of animal damage control and/or predator damage management activities on grazing allotments under the jurisdiction of the Dillon Field Office" and records "pertaining to the imposition or guidance of grizzly bear and wolf-livestock conflict prevention and reduction measures, and records pertaining to 'annual work plans' for the approval of animal damage control and/or predator damage management activities in the Dillon Field office area of jurisdiction" from May 1, 2021 to date of search. That same day, the BLM acknowledged this request and assigned it case number DOI-BLM-2024-000553.

55.    On May 8, 2024, Guardians submitted a request to the BLM's Western Montana District Office seeking records relating to "wolf- and grizzly bear-livestock conflict prevention and reduction measures, or direction on implementing guidance, for livestock grazing allotments; annual work plans for the approval of animal damage control and/or predator damage management activities; and meeting notes and correspondence relating to livestock depredations by wildlife" and "annual operating instructions, annual operating plans, allotment management plans, and grazing permits or amended permits, for grazing allotments" on BLM lands within the

jurisdiction of the Western Montana District Office from January 1, 2021 to date of search. The BLM acknowledged receipt of the request that same day.

56.     On June 13, 2024, the BLM contacted Guardians regarding its "requests received … on May 08, 2024, and May 09, 2024," although Guardians had not submitted a FOIA request on May 9, 2024. The BLM stated that it had aggregated the two requests because they "were of the same subject just different offices," and assigned the combined request tracking number DOI-BLM-2024-000712/MT-2024-27. It quoted Guardians' FOIA request of March 26, 2024 twice, but it made no reference to the contents of Guardians' May 8, 2024 request, and it did not cite the tracking or acknowledgement numbers for either request.[4]

57.     The BLM assigned Guardians' aggregated request to its "extraordinary" processing track but did not explain this designation or state whether the individual requests would each separately have been considered "extraordinary."[5] The BLM did not offer Guardians an opportunity to narrow its request, assert the existence of unusual circumstances, seek a deadline extension, or provide an estimated date of completion.

58.     On August 11, 2025, the BLM contacted Guardians regarding DOI-BLM-2024-000712/MT-2024-27, which it stated was "in process." However, the agency also noted that "with recent staffing departures, delays are to be expected in our response times."

---

[4] Due to the inaccurate description of both requests, Guardians was unaware until significantly later that these requests for different records from different BLM offices made at different times had actually been aggregated into one lengthy request. Only after the BLM informed Guardians in February 2026 that DOI-BLM-2024-000553 had been closed did Guardians reach the conclusion that it had been combined with a later request and redesignated as DOI-BLM-2024-000712/MT-2024-27.

[5] Defendants assign FOIA requests to "processing tracks" based on the "expected complexity of the collection/review/production process[.]" 43 C.F.R. §§ 2.15(a), (c). It should take an agency 21 to 60 workdays to process and make a determination on "complex" requests and over 60 days for "extraordinary" requests. *Id.* § 2.15(c)(3). The agency must offer requesters an opportunity to narrow the request so that it can be placed in a different track. *Id.* § 2.15(e). The use of multitrack processing does not alter an agency's statutory deadlines. *Id.* § 2.15(f).

59.    Guardians responded the next day, noting that its request was submitted over a year previously—thus predating the recent staffing departures—and requesting an estimated completion date.

60.    The BLM did not explain when the "recent" staffing departures had occurred or provide an estimated completion date. Instead, on September 9, 2025 the BLM informed Guardians that "currently, FOIA requests are being processed at a very slow pace, and delays are to be expected in our response times … The entire [Department] is making bureau-wide adjustments to better serve customer requests in the future." However, it did not specify what those "adjustments" were or when they might have any effect.

61.    On January 29, 2026, Guardians again requested an estimated date of completion for DOI-BLM-2024-000712/MT-2024-27. On February 11, 2026, the BLM responded that "due to continued staff reductions and hiring freezes, our office currently lacks the necessary personnel to process FOIA requests in the timely manner we strive to maintain … we are actively seeking solutions to restore at least a minimally functional capacity. At this time we have no way to provide an accurate production date."

62.    Defendants have never released records responsive to, provided an estimated completion date for, or made a final determination on DOI-BLM-2024-000712/MT-2024-27 and/or DOI-BLM-2024-000553.

**Request No. DOI-2025-001380**

63.    On November 15, 2024, Guardians requested records from the Service regarding authorizations to "take" grizzly bears.[6] It also asked that the Service expedite this FOIA request.

---

[6] The ESA forbids take—defined to include harassing, harming, wounding, killing, or capturing—of grizzly bears or other threatened and endangered species. 16 U.S.C. § 1532(19). However, the Service may authorize federal, state, and Tribal authorities to take grizzly bears

Guardians requested records from January 1, 2021 through the request date including "technical assistance letters" authorizing take under this rule, standardized report forms for authorized grizzly bear take, and communications related to such take authorizations.

64. The Service acknowledged Guardians' request on November 20, 2024 and assigned it a tracking number. The agency stated that the request fell into the "complex" processing track, which had 264 previously pending requests, and that it expected to make a determination by February 13, 2025, but it did not explain this assessment, assert the existence of unusual circumstances, or otherwise attempt to justify the anticipated delay. The Service also denied Guardians' request for expedited processing.

65. On November 26, 2024, the Service contacted Guardians to seek a meeting "to discuss what 'take' means." Guardians responded that its request was narrowly written, that the statutory definition of "take" was clear, and that it had identified the specific provisions under which the relevant take was authorized. However, Guardians agreed to meet with the agency in an attempt to reduce the anticipated response time.

66. Based on this meeting, on December 6, 2024 Guardians narrowed its request to authorizations pursuant to 50 C.F.R. § 17.40(b) for take of "nuisance" bears and non-lethal take for research purposes. The Service informed Guardians that it hoped to provide an interim response by early January, 2025.

67. On January 22, 2025, Guardians asked for an update. The next day, the Service provided an interim response consisting of implementation letters authorizing grizzly take and

---

that constitute a "demonstrable but non immediate threat to human safety" or are "committing significant depredations" to crops and livestock. 50 C.F.R. § 17.40(b). Non-lethal take may also be authorized for scientific purposes. *Id.*

some grizzly bear population trend reports. The agency also stated that it was still searching for responsive records and would follow up in early February.

68.     When Guardians requested an update on March 17, 2025, the Service explained that it had completed its search for responsive records but had not yet reviewed them. The agency also noted that it was "down 3 FOIA Coordinators and our FOIA Officer," increasing the work load for remaining personnel and slowing the review process.

69.     The Service did not describe the scope of responsive documents or whether any of them might be withheld, nor did it provide an estimated completion date.

70.     Guardians sought an update on April 1, 2026, noting that it had heard nothing from the agency for over a year. As of the date of this filing, Defendants have not responded.

71.     Defendants have not produced further records responsive to, provide an estimated completion date for, or made a final determination on DOI-2025-001380.

**Request No. DOI-2025-005470**

72.     On April 3, 2025, Guardians requested records from the Service regarding the impacts of the Beaverhead-Deerlodge National Forest's Land Management Plan on grizzly bears. The Service had concluded that implementation of the Plan would adversely affect, but not jeopardize the existence of, the grizzly bear; the agency asserted that this determination was supported by "a complete project file" and "additional information received during this consultation process, information in our files, and informal discussions between the Service and the [Forest Service]." Guardians requested the "complete project file" and all "additional information" on which Service's opinion was based.

73.     On April 17, 2025, the Service confirmed that it had accepted Guardians' request and assigned it to its "complex processing track," which had 418 previously pending requests,

16

and stated that it expected to make a final determination by July 1, 2025.

74.     The agency did not explain this assessment, assert the existence of unusual circumstances, or otherwise attempt to justify the anticipated delay, nor did it suggest that Guardians might narrow its request to achieve faster processing.

75.     Guardians contacted the Service on August 19 and December 9, 2025 to request an update. The agency did not respond.

76.     On April 3, 2026, Guardians again contacted the Service for an update; at the time of this filing, the agency has not responded.

77.     Defendants have not provided updates on, produced records responsive to, or made a final determination regarding 2024-FS-R1-01027-F.

**Request No. DOI-2026-004084**

78.     Finally, on February 23, 2026, Guardians requested records from the BLM's Utah State Office concerning "predator damage management, wildlife damage management or predator control (lethal or non-lethal), by USDA-APHIS Wildlife Services and/or state governmental entities on BLM Utah managed lands," including "wildlife damage management plans," field authorizations, correspondence, and "minimum requirements analyses."

79.     The BLM accepted the request that same day and assigned it a tracking number. It did not ask for additional information it might need to locate responsive records, nor assert the existence of unusual circumstances. Its final determination on Guardians' request was therefore due by March 23, 2026.

80.     The BLM did not make a determination by March 23, 2026. On that day it instead sent Guardians an interim response letter stating that it had "determined it will comply with [Guardians'] FOIA request" and was "currently" searching for responsive records. However, the

17

agency did not indicate the scope of the records it would release or withhold—nor could it have, since it was reportedly still locating responsive records.

81.     The BLM suggested that it had preliminarily assigned DOI-2026-004084 to its "complex" processing track, but it did not explain the basis for this designation. The agency explained that it would "conduct a cursory review to identify the quantity and nature of the records to ensure that we have placed your request in the appropriate processing track" once it had concluded its search. It would then begin "in-depth records review once we have received the responsive documents and this case is first in the queue."

82.     The BLM did not assert that any responsive records were exempt from disclosure. Instead, the agency suggested that it "may invoke exemptions 3, 4, or 5 if applicable." Because the BLM did not assert that these exemptions actually *were* applicable, it did not explain how they "may" apply to specific responsive records (which the agency had yet to locate) or describe the scope of the documents the agency "may" withhold.

83.     The BLM stated that, "[b]ased on our current workload, we estimate the target completion date for your request to be approximately October 30, 2026." The agency did not claim that any unusual circumstances pertained or otherwise explain its inability to meet FOIA's statutory deadline, nor did it give Guardians an opportunity to narrow the request. However, the BLM did inform Guardians that it could appeal "this delay."

84.     Because the agency had made no appealable determination on the request, Guardians was not obligated to further exhaust its administrative remedies before seeking judicial review. Nevertheless, hoping to resolve the matter swiftly and without needless judicial intervention, on April 13, 2026, Guardians filed an administrative appeal challenging the BLM's

18

failure to make a determination on and constructive denial of DOI-2026-004084. The BLM's response was due on May 11, 2026. *See* 5 U.S.C. § 552(a)(6)(A)(ii); 43 C.F.R. § 2.62.

85.    As of the date of this filing, the BLM has not responded to Guardians' appeal regarding DOI-2026-004084, which it has thus constructively denied.

86.    The documents sought in each of Guardians' Requests concern Defendants' management of public lands and imperiled wildlife and their administration of bedrock environmental laws. These are matters of public interest central to Guardians' overall conservation mission.

87.    Guardians has a statutory right to the records it seeks, which are "agency records" within the meaning of FOIA.

88.    As of the date this action was filed, Defendants have not described, and Guardians has been unable to evaluate, the sufficiency of the search for any of the Requests at issue. For several of the Requests, it is unclear whether Defendants have completed—or even begun—their search for responsive records, much less whether any such search was adequate.

89.    As of the date this action was filed, Defendants have not communicated to Guardians the scope of the documents they intend to release or withhold in response to any of Guardians' Requests.

90.    This pervasive agency inaction constitutes unlawful failure to conduct an adequate search for responsive records, unlawful failure to make final determinations on Guardians' Requests, unlawful denial of Guardians' Requests, and unlawful withholding of documents responsive to Guardians' Requests.

91.    There are no exceptional circumstances that would entitle Defendants to still more time to comply with FOIA; the delays are due solely to predictable agency workloads, and

19

Defendants have neither exhibited due diligence in processing Guardians' Requests nor made reasonable progress on reducing their FOIA backlog. *See id*. § 552(a)(6)(C).

92. Indeed, rather than increasing staff numbers to address their FOIA backlog, Defendants have arbitrarily cut personnel and resources needed to perform their statutorily mandated duties. Defendants' conduct is incompatible with a finding of exceptional circumstances, due diligence, and reasonable progress.

93. Guardians' claims are not insubstantial within the meaning of 5 U.S.C. § 552(a)(4)(E)(ii)(II).

94. This lawsuit is necessary to compel Defendants to disclose all responsive, non-exempt records at issue.

95. Based on the nature of Guardians' professional activities, Guardians will continue to rely on FOIA to request records from Defendants for the foreseeable future. Guardians' professional activities will be adversely affected if Defendants continue to violate FOIA's disclosure provisions and statutory deadlines.

96. Based on Defendants' past and current conduct, Defendants will likely continue to violate FOIA and Guardians' right to receive public records unless enjoined and made subject to a declaration of Guardians' legal rights by this Court.

## FIRST CLAIM FOR RELIEF
### Defendants Failed to Make a Timely Determination on Guardians' FOIA Requests

97. Guardians incorporates by reference all allegations in the preceding paragraphs.

98. Defendants are obligated to process all properly submitted FOIA requests in the manner set forth by statute and to make a final determination within the statutory timeframe. They failed to do so with regards to Guardians' Requests.

20

99.     An agency must "determine within 20 days . . . after the receipt of any [FOIA] request whether to comply with such request and . . . immediately notify the person making such request of . . . such determination and the reasons therefore[.]" 5 U.S.C. § 552(a)(6)(A)(i)(I). The notification must communicate the scope of the responsive documents that the agency intends to produce and withhold, explain the agency's rationale for any withholdings, and inform the requester of its right to appeal. *Id*. § 552(a)(3)(A); *see also CREW*, 711 F.3d Supp. at 182–83.

100.    Only under specific, statutorily prescribed circumstances may the agency extend its deadline to make a final determination for each FOIA request, and it may not do so indefinitely. *See* 5 U.S.C. § 552(a)(6)(B).

101.    Defendants have failed to communicate the scope of the responsive records they have located and whether they intend to withhold any documents. Defendants have therefore failed to make a final determination for any of Guardians' Requests at issue here.[7]

102.    At the time of this filing, Defendants have exceeded their time to make a determination on Guardians' Requests by as much as six years. Defendants have failed to properly invoke FOIA's provisions allowing for expansions of time.

103.    Defendants have violated and are violating Guardians' statutory rights by failing to make the requisite determinations within twenty days of receiving Guardians' Requests. *See* 5 U.S.C. § 552(a)(6)(A)(i).

---

[7] Although Defendants produced some documents responsive to DOI-2025-001380, this was not the final determination required by FOIA. *See Heritage Found*., 775 F. Supp. 3d at 430–31 (FOIA "determination" must be on all parts of a request). Likewise, although Defendants styled their preliminary response to DOI-2026-004084 as a "determination" that they would comply with the request, they did not release any records, communicate the scope of responsive records or the basis for any withholdings, or commit to releasing all responsive documents. Defendants have therefore not made a determination on any part of DOI-2026-004084. *See CREW*, 711 F.3d Supp. at 182–83, 186.

21

**SECOND CLAIM FOR RELIEF**
**Defendants Constructively Denied Guardians' Requests**
**and Unlawfully Withheld Non-Exempt Responsive Records**

104. Guardians incorporates by reference all allegations in the preceding paragraphs.

105. Upon receiving a FOIA request, an agency must determine whether it can comply with the request and then make responsive records "promptly available" to the requester. 5 U.S.C. § 552(a)(3)(A). To ensure compliance with these core provision, FOIA treats an agency's failure to timely respond to a request as a constructive denial of that request. *See id.* § 552(a)(6)(C). Because Defendants have neither made determinations for nor produced all records responsive to Guardians' Requests, the Requests have been constructively denied.

106. An agency may deny a FOIA request and withhold responsive records only in specific, narrowly defined situations. The government must release all responsive records unless the records do not exist, the request did not adequately describe the records, or the agency can provide a detailed rationale for withholding the records under a specific, statutorily defined exemption. *See id.* § 552(b) (setting forth exemptions to disclosure; *see also* 43 C.F.R. § 2.23(a) (defining circumstances under which government may deny a request). The government bears the burden of justifying its denial of a FOIA request and withholding of any responsive records.

107. Here, Defendants have failed to make a determination on or produce records responsive to Guardians' Requests, constituting a full or partial denial thereof.[8] Defendants have failed to justify their denial of Guardians' Requests.

108. Defendants have not asserted that the requested records do not exist or are not in Defendants' possession or control. Defendants have not asserted that Guardians' Requests were

---

[8] Defendants have failed to produce any documents responsive to most of Guardians' Requests; for DOI-2026-004084 and DOI-2025-001380, Defendants have neither produced all responsive documents nor asserted a basis for withholding them.

insufficiently detailed to locate the requested records. And Defendants have not asserted that any of the records are exempt from disclosure, much less justified withholding any documents. *See* 43 C.F.R. § 2.23(a)(1). Defendants were thus required to comply with Guardians' Requests and "promptly" produce all responsive records.

109. Defendants have violated and are violating Guardians' statutory rights by unlawfully denying the Requests in part or full and by withholding responsive, non-exempt records. *See* 5 U.S.C. § 552(a)(3)(A).

### THIRD CLAIM FOR RELIEF
### Defendants Unlawfully Denied Guardians' Appeal of Request No. DOI-2026-004084

110. Guardians incorporates by reference all allegations in the preceding paragraphs.

111. Defendants must respond to administrative appeals within 20 workdays; failure to do so constitutes constructive denial thereof, and the appellant may immediately challenge the agency's FOIA violations in federal district court. *See id*. § 552(a)(6)(A)(ii); *see also* 43 C.F.R. § 2.62; *Reep v. U.S. Dep't of Just*., 302 F. Supp. 3d 174, 181 (D.D.C. 2018), *aff'd*, No. 18-5132, 2018 WL 6721099 (D.C. Cir. Dec. 18, 2018).

112. Defendants' failure to resolve Guardians' appeal within the statutory timeframe constitutes constructive denial thereof, which Guardians now challenges.

113. Defendants unlawfully failed to make a timely determination on DOI-2026-004084. Although Defendants characterized their interim response as a "determination," it did not describe the scope of records at issue; indeed, Defendants conceded that they had not finished their search for responsive records. Instead, the interim response merely stated that Defendants might invoke various exemptions if they later decided that any responsive documents are exempt from disclosure. This did not satisfy the agency's obligation to make a determination on Guardians' Request within 20 workdays. *See CREW*, 711 F.3d at 182–83, 186.

114.    Moreover, Defendants failed to properly invoke any legal provision that would allow them additional time in which to make the requisite determination: Defendants did not ask for additional information on Guardians' Request, assert the existence of unusual circumstances, or give Guardians the opportunity to narrow its Request. *See* 5 U.S.C. § 552(a)(6)(B).

115.    Defendants also failed to justify their constructive denial of DOI-2026-004084, which was therefore unlawful. Defendants never alleged—much less adequately demonstrated—that the responsive records were exempt from disclosure; that Guardians had not reasonably described the requested records; that the responsive records did not exist, could not be found, or were not in Defendants' possession; or that Defendants could not readily provide the records in Guardians' preferred format. *See* 43 C.F.R. § 2.23(a) (lawful reasons to deny FOIA requests).

116.    Because Defendants' failure to make a timely determination on and constructive denial of DOI-2026-004084 were unlawful, so was the constructive denial of Guardians' appeal.

117.    Defendants have violated and are violating Guardians' statutory rights by unlawfully denying its appeal of and failing to produce records responsive to DOI-2026-004084.

## REQUEST FOR RELIEF

WHEREFORE, Guardians respectfully requests that this Court:

A.    Declare that Defendants have violated FOIA for the reasons set forth above;

B.    Order Defendants to comply immediately with FOIA by providing Guardians with the required determinations regarding, estimated completion dates for, and all non-exempt public records responsive to Guardians' Requests Nos. DOI-BLM-2024-001345, DOI-BLM-2024-000712/MT-2024-27 and/or DOI-BLM-2024-000553, DOI-2025-001380, DOI-2025-005470, and DOI-2026-004084;

24

C.      Award Guardians its costs and reasonable attorneys' fees in this action pursuant to

5 U.S.C. § 552(a)(4)(E)(ii)(II); and

D.      Grant Guardians such further and additional relief as Guardians may later request

or this Court may deem just and proper.


Respectfully submitted this 12th day of May, 2026.

/s/ Jennifer R. Schwartz
Jennifer R. Schwartz, Bar No. OR072978
WildEarth Guardians
213 SW Ash Street, Suite 202
Portland, OR 97204
503-780-8281
jschwartz@wildearthguardians.org

Attorney for Plaintiff WildEarth Guardians